

**SO ORDERED.**

**SIGNED March 29, 2012.**

**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

IN RE:

LEEWARD OPERATORS, LLC,                                    CASE NO. 09-50260

    Debtor                                                 Chapter 11

-------------------------------------------------------------------
DWAYNE M. MURRAY, TRUSTEE FOR THE
ESTATE OF LEEWARD OPERATORS, LLC,

    Plaintiff

VERSUS                                             ADVERSARY NO. 10-05015

A&T WELL SERVICE, INC., ET AL,

    Defendants

-------------------------------------------------------------------
AMENDED REASONS FOR DECISION
-------------------------------------------------------------------

The core issue in this adversary proceeding is the ranking of

privileges with respect to proceeds from the sale of oil and gas

interests.  The following motions are before the court: (1) a

Motion for Summary Judgment filed by Prime Oil Company, LLC ("Prime") and Magnolia Investments, Inc. ("Magnolia"), (2) a Motion for Summary Judgment filed by R.P.S. Cementing Company, LLC ("R.P.S."), and (3) a Motion for Summary Judgment filed by Eaton Oil Tools ("Eaton"), A&T Well Service, Inc. ("A&T"), and Sand Control Systems, Inc. ("Sand Control"). The court grants the motions filed by R.P.S., Eaton, A&T, and Sand Control as set forth below. The court denies the motion filed by Prime and Magnolia.

## BACKGROUND

Leeward Operators, Inc. ("Leeward") was the operator of record for two wells: J.C. Miller No. 1 in Jefferson Davis Parish, and Kilchrist No.1 in St. Landry Parish. Leeward obtained its interests in the Miller well from Prime. On March 22, 2008, Leeward and Prime entered into a letter agreement (the "March 22nd Letter Agreement") providing for the assignment of the oil, gas, and mineral leases pertaining to the Miller well. The March 22nd Letter Agreement provided that Leeward would pay $50,000 for the subject leases. The agreement also stated that Leeward would provide up to an additional $375,000 for "acreage costs, geological, geophysical, and other costs to acquire the leases and to satisfy the liens and other encumbrances on the wells ...." On May 28, 2008, Prime executed an assignment of 87.5% of the working interest in the subject leases to Leeward. The assignment reserved a 12.5% working

-2-

interest.    On June 24, 2008, Prime filed the assignment in the conveyance records of Jefferson Davis Parish. On October 1, 2008, Prime assigned two-thirds of the reserved working interest in the subject leases to Magnolia and Desiree Suzanne Miller.    This assignment was recorded in the conveyance records of Jefferson Davis Parish on October 15, 2008.

Significant supplies and services were provided to Leeward by various vendors from April 2008 to November 2008 in connection with Leeward's attempt to re-establish or boost production from the Miller and Kilchrist wells.   Some of these vendors were not fully paid by Leeward and filed statements of privilege under LSA-R.S. 9:4861 et seq. in the mortgage records of St. Landry Parish or Jefferson Davis Parish. The vendors filing statements of privilege included Eaton (January 12, 2009), A&T (October 28, 2008), R.P.S. (January 16, 2009) and Sand Control (December 9, 2008).   Leeward also failed to pay Prime the full $50,000 owed for the subject leases.  On December 23, 2008, Prime and Magnolia filed a statement of privilege asserting an oil and gas privilege and a vendor's privilege in the mortgage records of Jefferson Davis Parish. This filing included a copy of the March 22nd Letter Agreement.

On March 9, 2009, A&T, Eaton, and Innovative Energy Services, Inc. filed an involuntary petition for relief under Chapter 11 of the Bankruptcy Code with respect to Leeward.   Relief was granted

-3-

and, on May 1, 2009, Dwayne M. Murray was appointed Chapter 11 trustee of Leeward's bankruptcy estate (the "Trustee"). The court subsequently entered orders approving the sale of the interests of the estate and consenting co-owners in the subject leases for Miller and Kilchrist wells free and clear of any interests in the property under 11 U.S.C. §§ 363(b) and 363(f). The total sale price of the subject leases was approximately $311,000. The order provided that any liens or encumbrances on the subject leases would attach to the sale proceeds. Following the sale, the Trustee commenced the present adversary proceeding seeking a determination of the rank of the various privileges attaching to the proceeds from the sale of the estate's interests in the Miller and Kilchrist wells. The Trustee and various defendants filed an initial round of motions for summary judgement. With respect to the ranking of privilege claims against the Miller well, the court ruled, *inter alia*, that:

(1) Eaton had a valid oil and gas privilege under LSA-R.S. 9:4861 et seq. that attached to the proceeds of the Miller well, and that the principal amount of Eaton's claim is $188,562.12;

(2) A&T had a valid oil and gas privilege under LSA-R.S. 9:4861 et seq. that attached to the

-4-

proceeds of the Miller well, and that the principal amount of A&T's claim is $362,690.00;

(3) R.P.S. preserved its privilege under LSA-R.S. 9:4861 et seq. with respect to third parties by filing a proof of claim that provided sufficient notice under 11 U.S.C. § 546(b); and

(4) Prime and Magnolia did not preserve their vendor's privilege with the June 24, 2008 filing of the lease assignment because the assignment was filed in the conveyance records of Jefferson Davis Parish and not the mortgage records.

The current round of motions for summary judgment address Prime's and Magnolia's claim that they retain a right of dissolution under La. C.C. art. 2013, that this right attaches to the proceeds of the section 363 sale, and that their right of dissolution supercedes any Louisiana oil and gas privileges on the Miller well.

**DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there are no genuine

-5-

issues of material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P 56. The purpose of summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial. See Matsushita Electric Industries v. Zenith Radio Corp. 475 U.S. 574, 587 (1986). Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses. Celetex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Where the movant does not bear the burden of persuasion, the movant may satisfy its summary judgment burden by pointing to an absence of evidence supporting an essential element of the non-moving party's claim. Celetex Corp., 477 U.S. at 324-326 (absence of support for an essential element of the plaintiff's claim entitles the defendant to summary judgment unless in response the plaintiff non-movant sets forth facts that permit a reasonable trier of fact to find for the plaintiff on that essential element of his claim). Assuming that the movant has met this burden, the non-movant plaintiff must come forward with "substantial evidence" supporting the essential elements challenged in the motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In other words, the evidence must be sufficient to withstand a motion for directed verdict and to support the verdict of a reasonable jury. Id. Under this standard, the non-movant cannot rely on unsupported assertions or

-6-

arguments, but must submit sufficiently probative evidence supporting the essential elements of its claims challenged in the motion for summary judgment.

**B.    Oil & Gas Privilege Claims and Dissolution Under Article 2013**

LSA-R.S. 4862 defines the scope of a Louisiana oil & gas privilege.[1]    LSA-R.S. 9:4864 provides that this privilege is

---

[1]LSA-R.S. 4862 states:

The following persons have a privilege over the property described in R.S. 9:4863 to secure the following obligations incurred in operations:

(1) A contractor for the price of his contract for operations.

(2) A contractor for the price of his contract for providing services or facilities to persons performing labor or services on a well site located in the waters of the state.

(3) A laborer or employee of an operator or contractor, for the price of his labor performed at the well site.

(4) A person who performs trucking, towing, barging, or other transportation services for an operator or contractor, for the price of transporting movables to the well site.

(5) A person who transports, to or from a well site located in the waters of the state, persons who are employed in rendering labor or services on the well site, for the price of transporting those persons.

(6) A seller for the price of a movable sold to an operator or contractor that is:

(a) Incorporated in a well or in a facility located on the well site.

-7-

effective as to third parties when:

(1)     The claimant, who is a contractor, laborer, or employee begins rendering services at the well site.

(2)     Movables sold by the claimant to an operator or contractor are delivered to the well site.

(3)     The claimant begins transporting movables to, or persons to or from, the well site.

(4)     Property leased by the claimant to an operator or contractor is placed on the well site for use in operations.

A Louisiana oil and gas privilege outranks any mortgages or other privileges that become effective against third parties after the oil and gas privilege is established.  LSA-R.S. 9:4870(B)(2). Similarly, an oil and gas privilege outranks security interests on property subject to the privilege unless the security interest is "perfected before the privilege is established" or is "perfected by a financing statement covering the collateral filed before the privilege is established if there is no period thereafter when there is neither filing nor perfection." LSA-R.S. 9:4870(B)(3).

---

(b) Consumed in operations.

(c) Consumed at the well site by a person performing labor or services on a well site located in the waters of the state.

(7) A lessor for the rent of a movable leased to an operator or contractor used in operations and that accrues while the movable is located on the well site.

-8-

The court previously ruled that the oil and gas privileges asserted by A&T, Eaton, and Sand Controls outrank the vendor's privilege asserted by Prime and Magnolia. These oil and gas privileges outrank the vendor's privilege because Prime and Magnolia did not record a vendor's privilege in the parish mortgage records prior to the time the oil and gas privileges were established. La. Civ. Code art. 3271.

Dissolution, however, operates under different rules. Civil Code article 2013 provides:

> When the obligor fails to perform, the obligee has a right to the judicial dissolution of the contract or, according to the circumstances, to regard the contract as dissolved. In either case, the obligee may recover damages.

Judicial dissolution restores the parties to the situation "that existed before the contract was made." La. C.C. art. 2018. In the case of an immovable, the effect of dissolution "is annulment of the initial sale and return of the property free and clear of all encumbrances not placed thereon by the seller." United States v. Maniscalco, 523 F.Supp 1338, 1343 (E.D. La. 1981) (citing Sliman v. McBee, 311 So.2d 248 (La. 1975)). The right of dissolution is an "independent and substantive remedy in no way dependant upon the existence of a security device such as a mortgage or privilege." Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 544 (5th Cir. 2004). Accordingly, the seller's right to dissolution is

-9-

effective even if the underlying sale document is not recorded. <u>See</u> Yiannopoulos, 2 La. Civ. L. Treatise, Property § 233 (4th ed 2011) However, if the public record shows that the purchase price was paid, the seller's dissolution rights are not effective against third parties. <u>Id.</u>; <u>LeBlanc v. Bernard</u>, 554 So.2d 1378, 1381 (1st. Cir. 1989)

## C. Prime and Magnolia's Dissolution Claim

Based on the summary judgment record, Prime's and Magnolia's dissolution claim (if any) is ineffective against A&T, Eaton, R.P.S., and Sand Control because, based on the public record at the time the oil & gas privileges arose, the consideration for the lease assignment had been paid and there was no evidence of a credit sale in the public record.[2] The assignment filed in the

---

[2] Although the parties do not address the issue in their briefs, it is questionable whether Prime and Magnolia have a dissolution right with respect to the proceeds from the sale of the Miller well interests. The sale of the estate's interest in the Miller well was free and clear of any interests in the property, but provided that any privileges or other encumbrances would attach to the proceeds from the sale. Simply put, an unexercised right of dissolution is not a privilege or encumbrance that attached to the sale proceeds pursuant to the court's order. Dissolution is a remedy that is rooted in the contract between the parties. Unlike the oil and gas privileges asserted by Eaton, A&T, and Sand Control, it is not an interest in an immovable – here, the estate's interest in the Miller well. <u>See</u> Yiannopoulos, 2 La. Civ. L. Treatise, Property § 233 (4th ed 2011) (right of dissolution relating to an immovable is not a real right – it is "a right to transform a legal relationship, which is neither personal nor real.") Accordingly, given the section 363 sale free and clear, Prime's and Magnolia's claim

-10-

conveyance records of Jefferson Davis Parish in June 2008 stated that:

> "NOW, THEREFORE, in consideration of the sum of One Hundred Dollars ($100), cash in hand paid, and of other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, PRIME OIL COMPANY, L.L.C., ... does hereby convey, assign, transfer, sell, set-over and deliver unto LEEWARD OPERATORS, L.L.C., ... 87.50% of the right, title and interest of [Prime] in and to [the] Leases...."

Prime and Magnolia cannot base their right to dissolution on the March 22nd Letter Agreement because that agreement was not filed in the public records at the time that the oil and gas privileges were established. See La. C.C. art. 3342 ("A party to a recorded instrument may not contradict the terms of the instrument or statements of fact it contains to the prejudice of a third person who after its recordation acquires an interest in or over the immovable to which the instrument relates.") Nor can Prime and Magnolia argue that the contents of the public records are

---

based on the assignment and the March 22nd Letter Agreement is merely a claim for damages. See La. C.C. art. 2018 (providing that if the status quo cannot be restored, the "court may award damages"). While Magnolia and Prime contend that this claim is secured by a vendor's privilege, as the court previously ruled, any vendor's privilege asserted by Magnolia and Prime does not outrank the Louisiana oil and gas privileges asserted by Eaton, A&T, and Sand Control. Given the court's ruling based on the public records, however, the court need not address Prime's and Magnolia's right of dissolution in light of the section 363 sale.

-11-

irrelevant because there is no evidence that Eaton, A&T, R.P.S. and Sand Controls actually relied on the contents of the public records. The application of the public records doctrine in the present case does not turn on proof that a third party actually relied on the contents of the public records.[3]

**CONCLUSION**

In sum, Prime's and Magnolia's right to dissolution (if any) was not effective as to third parties at the time Eaton's, A&T's,

---

[3] Louisiana Civil Code article 3338 states:

> The rights and obligations established or created by the following written instruments **are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records** pursuant to the provisions of this Title:
>
> (1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
>
> (2) The lease of an immovable.
>
> (3) An option or right of first refusal, or a contract to buy, sell, or lease an immovable or to establish a real right in or over an immovable.
>
> (4) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.

(emphasis added). There is no independent requirement that a third party actually review and rely on the contents of the public records in order to achieve priority over an unrecorded interest based on the facts of the present case.

-12-

R.P.S.'s and Sand Control's oil and gas privileges were established. As a result, these privileges outrank any right held by Prime and Magnolia.   Therefore, R.P.S., Eaton, A&T, and Sand Controls are entitled to summary judgment. Eaton's, A&T's, R.P.S.'s and Sand Control's section 9:4862 oil and gas privileges "are of equal rank and priority" and are entitled to pro rata distribution from the proceeds of the Miller well.

Each respective party shall submit an order in regard to their motion within 10 days.

###

-13-